UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Franchetta Hollington, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>First-Citizens Bank & Trust Company; and )<br>Reeves Skeen, individually, )<br>)<br>Defendants. )<br>) | C/A No. 2:24-cv-01306-BHH-MHC<br><br><br><br>**REPORT AND RECOMMENDATION** |

Plaintiff, who worked at Defendant First-Citizens Bank & Trust Company (the "Bank") for over twenty years, brings this employment discrimination action against the Bank and Reeves Skeen, an employee of the Bank. ECF No. 20. Plaintiff asserts the following causes of action in her Second Amended Complaint: (1) a claim against Defendants for violations of the Equal Pay Act, 29 U.S.C. § 206 *et seq.*; and (2) a claim against Defendants for discrimination in violation of 42 U.S.C. § 1981 for alleged (a) discriminatory compensation, and (b) discriminatory failure to promote. ECF No. 20.

Presently before the Court for disposition is a Partial Motion to Dismiss filed by Defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 22. In their Motion, Defendants seek dismissal of Plaintiff's § 1981 claim for discriminatory failure to promote. *Id.* Plaintiff filed a Response in Opposition to the Motion, ECF No. 23, and Defendants filed a Reply, ECF No. 24. The Motion is ripe for review. For the reasons set forth below, the undersigned recommends that the Motion be denied.[1]

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2) (D.S.C). As the Motion is dispositive, this Report and Recommendation is entered for review by the District Judge.

1

## **LEGAL STANDARD**

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Williams v. Preiss-Wal Pat III, LLC*, 17 F. Supp. 3d 528, 531 (D.S.C. 2014); *see Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant will have "fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). "[T]he facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a Rule 12(b)(6) motion, the court is required to evaluate the complaint in its entirety, accept the factual allegations in the pleading as true, and draw all reasonable factual inferences in favor of the party opposing the motion. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440, 448 (4th Cir. 2011). Moreover, the court must evaluate "the complaint in its entirety, as well as documents attached or incorporated into the complaint." *Id.* at 448. The court may consider a document not attached to the complaint, so long as the document "was integral to and explicitly relied on in the complaint," and there is no authenticity challenge. *Id.* (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). "A complaint should

not be dismissed as long as it provides sufficient detail about the claim to show that the plaintiff has a more-than-conceivable chance of success on the merits." *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 511 (4th Cir. 2015) (internal quotation marks omitted).

## **DISCUSSION**

In their Motion, Defendants seek dismissal of one claim: Plaintiff's § 1981 claim for discriminatory failure to promote. ECF No. 22. Defendants argue that Plaintiff failed to state a failure-to-promote claim because she did not allege sufficient facts to establish a prima facie case of failure to promote under § 1981. *See* ECF No. 22-1 at 12 ("[T]o state a prima facie claim in a failure-to-promote case, a plaintiff must nevertheless allege facts showing (1) she is a member of a protected group; (2) she applied for the position in question; (3) she was qualified for the position; and (4) she was rejected under circumstances that give rise to an inference of unlawful discrimination." (quotation marks and citation omitted)). Specifically, Defendants argue that Plaintiff "fails to allege that she submitted an application for the position despite the fact that it was properly posted by the Bank," "fails to allege the qualifications required for the position, fails to plead that she was qualified for the position, and fails to plead that she was more qualified for the position than the candidate who was ultimately selected." ECF No. 22 at 1–2; *see* ECF No. 22-1 at 4–22. Defendants also contend that "Plaintiff fails to plead facts suggesting that she was rejected under circumstances that give rise to an inference of unlawful discrimination." ECF No. 22 at 2.

In her Response, Plaintiff argues that Defendants mistakenly suggest she must plead facts showing each element of a prima facie failure-to-promote claim to survive a motion to dismiss. ECF No. 23. She contends that the elements of a prima facie case "are part of 'an evidentiary standard, *not a pleading requirement*,'" and therefore are not applicable at this stage of the

litigation, and she notes that many of the cases Defendants rely upon in support of their Motion to Dismiss are cases decided at the summary judgment stage. *Id.* at 6 (emphasis in original) (citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002)); *see id.* at 12–13 (collecting summary judgment cases). She further argues that she has alleged sufficient facts to create a reasonable inference that she was denied a promotion because of unlawful race discrimination. *Id.* at 7–10.

The undersigned agrees with Plaintiff that she is not required to plead facts as to each element of a prima facie case to survive a motion to dismiss. *See McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584–85 (4th Cir. 2015) (holding that the district court erred in requiring plaintiff to plead facts establishing a prima facie case of discrimination and explaining that the Supreme Court has "held that an employment discrimination plaintiff need not plead a prima facie case of discrimination to survive a motion to dismiss because the prima facie case is an evidentiary standard, not a pleading requirement that may require demonstrating more elements than are otherwise required to state a claim for relief" (citing *Swierkiewicz* 534 U.S. at 510–12, 515) (internal quotation marks omitted)); *see Ali v. BC Architects Eng'rs, PLC*, 832 F. App'x 167, 171 (4th Cir. 2020), *as amended* (Oct. 16, 2020) (explaining that "a § 1981 plaintiff need not plead facts demonstrating that she satisfies the *McDonnell Douglas* framework to survive a motion to dismiss").

Nonetheless, although "a plaintiff need not plead a prima facie case to survive a motion to dismiss, a [discrimination] complaint is still subject to dismissal if it does not meet the ordinary pleadings standard under *Twombly* and *Iqbal*." *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017), *as amended* (Aug. 11, 2017) (citing *McCleary-Evans*, 780 F.3d at 584–85; *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)). Thus, the *McCleary-*

4

*Evans* court explained that to state a discrimination claim, a plaintiff is "required to allege facts to satisfy the elements of a cause of action created by th[e] statute."[2] 780 F.3d at 585.

"Section 1981 guarantees to all persons in the United States 'the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens.'" *Spriggs v. Diamond Auto. Glass*, 165 F.3d 1015, 1017 (4th Cir. 1999) (quoting 42 U.S.C. § 1981(a)). The statute defines "make and enforce contracts" as including the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Although the text of the statute "does not provide a cause of action to enforce the protections it guarantees[,] . . . the Supreme Court created a judicially implied private right of action under § 1981 for race-based discrimination." *Resendiz v. Exxon Mobil Corp.*, 72 F.4th 623, 627 (4th Cir. 2023) (internal citations and quotation marks omitted) (further explaining that courts "now read the statute to prohibit the refusal to enter a contract with someone based on a protected reason").

To succeed on a § 1981 claim, a plaintiff must ultimately establish "that (1) the defendant intended to discriminate on the basis of [race], (2) the discrimination interfered with a contractual interest, and (3) the interference with a contractual interest would not have happened but for the plaintiff's [race]." *Id.* at 628 (citing *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022); *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006)). Thus, to survive a motion to dismiss, a plaintiff must allege facts that, if accepted as true, allow the court to reasonably infer that all three elements are met. *Id.*; *Nadendla*, 24 F.4th at 305–06; *see Comcast*

---

[2] Although *McCleary-Evans* assessed claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, the Fourth Circuit has recognized the similarity of a race discrimination claim pursued under that statute and one pursued under § 1981. *See Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004); *see also Ali*, 832 F. App'x at 171 n.3.

*Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020) ("To prevail, a plaintiff must *initially plead* and ultimately prove that, *but for race*, [the plaintiff] would not have suffered the loss of a legally protected right.") (emphasis added); *Ali*, 832 F. App'x at 171 ("[T]o state a § 1981 race-discrimination claim, a plaintiff must allege facts making it plausible that, but for race, she would not have suffered the loss of a legally protected right under the statute." (cleaned up)).

Defendants move to dismiss the part of Plaintiff's Second Cause of Action asserting discriminatory failure to promote in violation of § 1981. ECF No. 22. As to that cause of action, Plaintiff alleges, in relevant part, as follows:

> By the actions described in this Complaint, Defendants have discriminated against Plaintiff on the basis of her race in violation of Section 1981 by denying her the same terms and conditions of employment available to employees who are white, including, but not limited to: (b) Intentionally refusing to promote Plaintiff to a managerial role over the Charleston Main Branch, and instead i. Filling the managerial role at the Charleston Main Branch with a white employee, Matthew Montonari, with significantly less experience than Plaintiff; and ii. Offering Plaintiff a "dual role" in which she would be paid less than $85,000.00, which is less than Mr. Montonari was paid.

ECF No. 20 at ¶ 114(b). Plaintiff further alleges that "[b]ut for Plaintiff's race, Plaintiff would have . . . been promoted to manager of the Charleston Main Branch . . . ." *Id.* at ¶ 118. She alleges that "Skeen viewed Plaintiff as a 'leopard,' a wild African animal" and that the "Area Executive of the Upper South Carolina Market, who is white, noted the racial animus, stating, '[Defendant Skeen] wouldn't treat you this way if you were white.'" *Id.* at ¶¶ 116–17. Finally, Plaintiff alleges that "but for Defendants' intentional racial animus against Plaintiff, Plaintiff would have enjoyed the same terms and conditions, including compensation and promotions, as white Bank employees." *Id.* at ¶ 122.

Elsewhere in the Second Amended Complaint, Plaintiff alleges the following facts related to her failure-to-promote claim:

6

- Defendant Skeen is a white male and the Bank's "Area Executive" for the Charleston area, "exercising authority over compensation, hiring and promotional decisions." ECF No. 20 at ¶ 4.

- For an eight-month period beginning in June 2020, Plaintiff served as the temporary Manager of Retail Banking ("MRB") for the Charleston Metro Market while the regular MRB was on medical leave. During this time, Plaintiff managed a total of seven branches in the Charleston market, which involved managing sales, human resource matters, client matters, branch managers, and other personnel. Plaintiff did not receive any infractions or counseling while she served as the temporary MRB. *Id.* at ¶¶ 17–20.

- "[I]n 2021, Plaintiff told Mr. Craine, the new MRB of the Charleston Metro Market, that she was interested in a posted Financial Services Manager ('FSM') position[,] which is below the level of MRB, at the Charleston Main Branch location in downtown Charleston. Mr. Craine responded that he would need to 'mention this to Reeves [Skeen].'" *Id.* at ¶ 31.

- "Days later, Mr. Craine told Plaintiff that Defendant Skeen 'wasn't shocked you'd be interested in being an FSM over Charleston Main, but he said **it's too big for you**,'" and that Defendant Skeen "had indicated he was 'looking for someone with more business experience.'" *Id.* at ¶¶ 32–33 (emphasis in original).

- "In response, Plaintiff emphasized to Mr. Craine that the Charleston Main Branch's business portfolio was combined with the Branch's previous location in Marion Square in downtown Charleston, and that she had helped build that portfolio over her many years with the Bank." *Id.* at ¶ 34.

- "At the time Plaintiff requested consideration for the FSM position at the Charleston Main Branch, Plaintiff had spent 14 years of her banking career in the Bank's Charleston Metro Market. Common refrains among staff and customers in the Charleston Metro Market for any issue or question was, 'you need to ask [Plaintiff]' or 'you need to talk with [Plaintiff].'" *Id.* at ¶¶ 35–36.

- "With regard to the skill required to perform the FSM position, FSMs are required to have significant experience and training in banking." *Id.* at ¶ 62.

- FSMs perform the following core tasks: oversee the operations of their assigned branch; manage the branch's employees, including ensuring sales targets are met, training staff, leading and developing the branch's team, and conducting regular staff meetings; ensure compliance with the Bank's policies and regulation; oversee and implement marketing; ensure branch profitability; maintain a high degree of customer satisfaction; and maintain and develop positive relationships with existing and prospective clients. *Id.* at ¶ 61.

- "Instead of promoting Plaintiff to FSM of the Charleston Main Branch, Defendant Skeen hired Matthew Montanari, a white employee **in his third year of banking**, for the position." *Id.* at ¶ 37 (emphasis in original).

- "After Plaintiff had been denied consideration for the FSM role at the Charleston Main Branch, and after she had asked for a raise in consideration of her performance of the MRB role for eight months and tenure with the Bank, on Defendant Skeen's instruction, Jason Maurer instead offered Plaintiff a 'dual role' managing two North Charleston Market branches: FSM of the Ashley Phosphate Branch, and the MRB of the Oakridge Branch." *Id.* at ¶ 39.

- "Stated differently, suddenly Plaintiff was good enough to take the MRB role at a [North Charleston] branch, and an FSM role at another North Charleston location, but not good enough to run a single branch in the Charleston Market as an FSM." *Id.* at ¶ 44.

- "Upon information and belief, bankers in the Charleston Metro Market have more opportunities for growing their business portfolios than bankers in the North Charleston Market, whose customers' income are moderate to lower, versus higher customer incomes in the Charleston Metro Market." *Id.* at ¶ 42.

- "Upon information and belief, despite her experience, tenure, and proven qualifications, the Bank and Defendant Skeen did not want Plaintiff, a Black woman, as the 'face' of the Charleston Market. Rather, the Bank and Defendant Skeen were comfortable with Plaintiff as the face of the North Charleston Market." *Id.* at ¶¶ 45–46.

- "Plaintiff told Defendant Skeen that she would consider the [dual] position for a salary of $85,000.00, which was less than the $100,000-$120,000 salary Mr. Montanari was compensated as an FSM of a single branch (Charleston Main), and not as an MRB. Defendant Skeen refused Plaintiff's request for an $85,000.00 per year salary, and threateningly replied, 'Do you understand what will happen to your career if you don't take this role?'" *Id.* at ¶¶ 54–55.

- "After this discussion, Dot Gaitlyn, a white woman and the Area Executive of the Upper South Carolina Market for First-Citizens Bank, told Plaintiff, 'your back is against the wall and he's going to ruin your career if you don't accept the role" and "Reeves (Defendant) wouldn't be treating you this way if you were white.'" *Id.* at ¶ 56.

- "Instead of accepting the dual role with more responsibility at inferior compensation to Mr. Montanari, Plaintiff accepted a lower role, as an FSM over the Oakridge and Ashley Phosphate Branches." *Id.* at ¶ 57.

- "On or around May 2022, because neither the Bank nor Defendant Skeen remedied the unequal pay based on her gender, and intentional discrimination based on her race with regard to the Bank's and Defendant Skeen's failure to promote her to the Charleston Main Branch, Plaintiff resigned." *Id.* at ¶ 81.

Accepting the truth of the allegations in Plaintiff's Second Amended Complaint and viewing all inferences in the light most favorable to Plaintiff, *see Kolon Indus., Inc.*, 637 F.3d at 440, the undersigned finds that Plaintiff has alleged sufficient factual allegations to state a plausible

claim of discriminatory failure to promote in violation of § 1981. First, Plaintiff has alleged facts to support an inference that Defendant Skeen was motivated by racial bias and intended to discriminate against Plaintiff on the basis of race. *See* ECF No. 20 at ¶¶ 48–50 (alleging that Skeen repeatedly called Plaintiff a "leopard" during work group calls and explained that she reminded him of leopards he and his wife had seen on their trip to Africa); *id.* at ¶ 56 (alleging that a white Bank executive told Plaintiff that Reeves was going to ruin Plaintiff's career and that he would not be treating her this way if Plaintiff were white).

Second, Plaintiff alleges facts from which it can be inferred that the discrimination interfered with an interest protected by § 1981. *See* 42 U.S.C. § 1981(a)–(b) (guaranteeing all persons within the United States the same right as white citizens in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship"); *Resendiz*, 72 F.4th at 627 ("[W]e now read the statute to prohibit the refusal to enter a contract with someone based on a protected reason."). Specifically, she alleges that she informed Defendant Skeen (through Craine) that she would like the open Charleston Main Branch FSM position, Craine communicated her desire to Defendant Skeen, and Defendant Skeen declined to promote her to that position.[3] *See id.* at ¶¶ 31–33.

Finally, Plaintiff has alleged sufficient facts from which to infer that the interference with the protected right would not have happened but for her race. Specifically, she alleges that the

---

[3] Defendants argue that the Court should infer from Plaintiff's allegation that the FSM position was "posted" that the Bank has a formal application and hiring process and that she failed to plead that she formally applied for the Charleston Main Branch FSM position. ECF No. 22-1 at 10–14; ECF No. 24 at 7–10 & n.2 (citing *Williams v. Giant Food Inc.*, 370 F.3d 423, 430–31 (4th Cir. 2004) (summary judgment). The undersigned is not persuaded that it would be reasonable to infer that the Bank makes promotional decisions through a formal application and hiring process, however, as Plaintiff also alleges that Skeen offered her MRB and FSM positions in North Charleston without any indication that Plaintiff formally applied for those positions.

FSM position required significant experience and training in banking; that she had twenty years of banking experience, fourteen of which were within the Charleston Metro Market; that she had successfully served in a higher level role in the Charleston Metro Market for over eight months where she had a number of the same responsibilities (albeit on a larger scale) as she would have in the FSM position; and that, in contrast, the white employee selected for the FSM position had only three years' banking experience. *See id.* at ¶¶ 10, 35–37, 61–62, 65. Plaintiff further alleges that Defendants did not want a Black woman to be the "face" of the Charleston market. *Id.* at ¶ 45. It is reasonable to infer from these allegations that Plaintiff was qualified for the position but lost out on this promotion to a less experienced white candidate as a result of her race. *See McCleary-Evans*, 780 F.3d at 586 (contrasting *Swierkiewicz*, 534 U.S. at 508, where the Supreme Court found sufficient allegations to state a claim, and explaining that the allegation "that the new chief underwriting officer was less experienced and less qualified for the position because he had only one year of underwriting experience at the time he was promoted, whereas Swierkiewicz had 26 years of experience in the insurance industry . . . is precisely the kind of allegation that is missing from McCleary–Evans' complaint" (internal quotation marks omitted)).

It may be that, after discovery, Plaintiff ultimately will not be able to establish a prima facie case or prove that her race was the but-for cause of the decision not to promote her to the Charleston Main Branch FSM position. However, at this stage of the litigation, the undersigned finds Plaintiff's factual allegations sufficient to plead plausibly that but for race, she would not have suffered the loss of a legally protected right under § 1981. *See Comcast Corp.*, 589 U.S. at 341; *Ali*, 832 F. App'x at 171; *see also Reardon v. Herring*, 191 F. Supp. 3d 529, 549 (E.D. Va. 2016) (contrasting the "higher level of factual specificity" demanded of plaintiffs at the summary judgment stage with the lower level of detail required at the pleading stage and noting that

"*Twombly* and *Iqbal* require only that the plaintiff plead facts sufficient to support an inference that the plaintiff's claim to relief is plausible to justify unlocking the doors of discovery").

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Defendants' Partial Motion to Dismiss (ECF No. 22) be **DENIED**.

**IT IS SO RECOMMENDED.**

The parties are referred to the Notice Page attached hereto.

February 11, 2025  
Charleston, South Carolina

Molly H. Cherry  
United States Magistrate Judge

11

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).